*In re* H. J. BARNHOUSE *et al.*

No. 11506.

1. CONTEMPT OF COURT—*Judge at Chambers.* Chapter 106, Laws of 1897 (Gen. Stat. 1897, ch. 85, §§ 10–15), has deprived judges at chambers of power to punish for contempt.

2. ———— *Arrest—Bond—Authority in Court, not in Judge.* Since the passage of said act a district judge at chambers has had no authority to cause a person charged with contempt to be brought before him to answer therefor, nor power to require a person so arrested to enter into a recognizance for his future appearance. Such orders can only be made by the court.

Original proceedings in *habeas corpus.* Opinion filed October 7, 1899. Petitioners discharged.

*Sam. Kimble, Howel Jones,* and *John E. Hessin,* for petitioners.

*S. H. Allen, Fred. Robertson,* and *Tully Scott,* for respondent.

The opinion of the court was delivered by

SMITH, J. : On the 29th day of May, 1899, the judge of the seventeenth judicial district, at chambers in Oberlin, Decatur county, granted a temporary injunction in an action then pending in the district court of Rawlins county, wherein Fred. B. Glover was plaintiff and H. J. Barnhouse and others were defendants, restraining the defendants, their agents, servants, and employees, from entering on certain lands described, situate in Rawlins county, and from driving or grazing stock thereon, and from in any manner, directly or indirectly, molesting, disturbing or driving away the stock of said plaintiff, Fred. B. Glover, or in any manner disturbing him in the peaceable and quiet possession of the premises. A copy of the

54—60 KAN.

order was personally served. Thereafter, on affidavits of said plaintiff and others being presented to the judge of said district court at chambers, in Oberlin, Decatur county, showing that the commands of the temporary order of injunction had been violated, a writ of attachment was issued by the judge commanding the sheriff of Rawlins county to arrest said H. J. Barnhouse and the other petitioners herein, and bring them each forthwith before him at his office in Oberlin, Decatur county, at chambers, there to answer unto said judge for the contempt alleged against them in the violation and disobedience of the restraining order, or temporary injunction, issued at the time and place mentioned.

The petitioners were arrested and brought before the judge at Oberlin, whereupon they each demanded a trial by jury, which request was by the judge allowed. Four of the petitioners were required to enter into a bond in the sum of $500 each as security to obey the temporary injunction until the final hearing, conditioned that they would make restitution of the premises described in said injunction order to the plaintiff Fred. B. Glover, and remove from the premises all stock placed there by said persons in violation of said order, and desist and refrain from directly entering upon the premises, from keeping and maintaining a force of men thereon, from driving, keeping or grazing upon said premises any cattle, or from in any manner interfering with or driving the cattle of said Fred. B. Glover, and in any manner molesting or disturbing him, his agents, servants, or employees, in the quiet possession of the land. It was further ordered that each of said four persons enter into a further recognizance in the sum of $100 to be and appear at the first day of the next regular

term of the district court of Rawlins county, to answer the accusation of violating the injunction order.

Twelve of the other petitioners were required to enter into a bond in the sum of $150 each to obey the temporary injunction, and a further bond in the sum of $50 each for their appearance at the first day of the regular term of the district court of Rawlins county. In default of compliance with the order last named the petitioners were ordered by the judge to be confined in close custody in the jail of Rawlins county.

Section 16, article 3, of the constitution, reads: "The several justices and judges of the courts of record in this state shall have such jurisdiction at chambers as may be provided by law." Judges at chambers are wholly without jurisdiction or authority to act unless power so to do is conferred by the legislature. It follows that if that body can, by withholding its consent, deny such judge the right to perform judicial acts, it can withdraw that consent after it has once been given. In either case that officer is effectively deprived of power. The judicial power of the state is vested in the supreme court, district *courts*, probate *courts*, justices of the peace, and such other *courts* inferior to the supreme court as may be provided by law. (Const., art. 3, § 1.) The general doctrine is that all judicial business must be transacted in *court*, and such business as may be transacted out of court is exceptional and must find express authority in the statute. (4 Encycl. Pl. & Pr. 337; *Tol. A. A. & G. T. Ry. Co. v. Dunlap,* 47 Mich. 456.)

Until the enactment of chapter 106, Laws of 1897 (Gen. Stat. 1897, ch. 85, §§ 10–15), disobedience of an order of injunction might have been punished as a contempt by any court or judge who might have granted the order. (Gen. Stat. 1897, ch. 95, § 259;

Gen. Stat. 1889, ¶ 4342 ; *The State v. Cutler*, 13 Kan. 131.)   The act of 1897, however, has taken away from the judge all power either to try or to commit persons for contempt, and has vested such authority solely in the courts.     Indeed, by section 3, contempts of the judge at chambers must be tried and punished by the court.     The first four sections of the act read :

"SECTION 1.   That contempts of court are divided into two classes, direct and indirect, and shall be proceeded against only as hereinafter prescribed.

"SEC. 2.   That contempts committed during the sitting of the court or of a judge at chambers, in its or his presence are direct contempts.     All other are indirect contempts.

"SEC. 3.   That a direct contempt may be punished summarily without written accusation against the person arraigned, but if the court shall adjudge him guilty thereof a judgment shall be entered of record in which shall be specified the conduct constituting such contempt, with a statement of whatever defense or extenuation the accused offered thereto and the sentence of the court thereon.   .

"SEC. 4.   That upon the return of an officer on process or an affidavit duly filed, showing any person guilty of indirect contempt, a writ of attachment or other lawful process may issue and such person be arrested and brought before the court ; and thereupon a written accusation setting forth succinctly and clearly the facts alleged to constitute such contempt shall be filed and the accused required to answer the same, by an order which shall fix the time therefor, and also the time and place for hearing the matter ; and the court shall on proper showing extend the time so as to give the accused a reasonable opportunity to purge himself of such contempt.     After the answer of the accused, or if he refuse or fail to answer, the court may proceed at the time so fixed to hear and determine such accusation upon such testimony as shall be produced.     If the accused answer, the trial shall proceed upon testimony produced as in criminal cases,

and the accused shall be entitled to be confronted with the witnesses against him ; but such trial shall be by the court, or upon application of the accused, a trial by the jury shall be had as in any criminal case. If the accused be found guilty judgment shall be entered accordingly, prescribing the punishment."

It will be observed that by the terms of section 4, under which the petitioners in the case at bar were proceeded against, persons arrested under a writ of attachment or other process for alleged contempt must be brought before the court. Herein lies the illegality of the detention of the petitioners. They were not brought before such tribunal, but before a judge of the court in vacation, in a county other than that in which the suit was pending in which the temporary order of injunction was granted. Under the terms of the act in question contempts can be proceeded against *only* as therein prescribed, and by section 6 it is made to apply to *all* proceeedings for contempt in all the courts of Kansas, and all acts in conflict with it are repealed. Section 4 relates solely to proceedings in cases of indirect contempt, and clearly specifies that they shall be dealt with in a formal manner by the court and not by the judge at chambers. The section does not contain the word "judge." Any action at chambers is necessarily beyond the purview of this section, since a jury trial is allowed the accused on his application.

Much has been said by counsel for the respondent regarding the inherent authority of courts, especially constitutional tribunals, to punish for contempt, it being contended that they are safely armed with the same secure from any diminution of its force by the law-making power. In this case, however, we are concerned with no other question than that of the power of a judge at chambers, by the issuance of a

writ of attachment or other process, to cause persons charged with contempt to be brought before him and then imprisoned upon failure to comply with an order there made.    Inherent authority of courts is not involved, because no court acted or attempted to act. The relevant question is not whether courts have been deprived of inherent power, but whether judges at chambers have been divested of statutory power. The petitioners are not deprived of liberty by any order of a court, but by the command of a judge who had been dispossessed of jurisdiction by an act of the legislature withdrawing from him a power which he theretofore possessed.

We do not decide whether, when a direct contempt of a judge has been committed in his presence, he may not issue an attachment for the arrest of the offender, ordering him to be brought before the court to answer therefor.

The order of the judge required the petitioners to enter into a bond conditioned that they would make restitution of the premises, obey the temporary injunction, remove all stock from the premises placed there in violation of the order, and desist from entering upon the premises, etc.    We can find no authority in the statute for such bond.    Section 259, chapter 95, General Statutes of 1897 (Gen. Stat. 1889, ¶ 4342), provides for the giving of security to obey the injunction after a party has been adjudged guilty of contempt and punished therefor, but such bond cannot be required before that stage of the proceedings.

The judge at chambers being without jurisdiction, the petitioners will be discharged.